F. WESEL MFG. CO. v. PRINTING MACHINERY CO.

(District Court, S. D. New York. November 5, 1914.)

No. 11-42.

1. PATENTS (§ 328*)—INFRINGEMENT—PRINTING PLATE HOLDER.
    The Storm patent, No. 673,485, for a printing plate holder, the essential feature of which is that the block supporting the clamp which holds the plate in place on the base is removable from the groove in the base in which it slides at any point, but can be fixed in position by turning a screw, construed, and *held* not infringed.

2. PATENTS (§ 22*)—INFRINGEMENT—SUBSTITUTION OF EQUIVALENTS.
    While the nonuse of a patented device does not estop the owner of the patent from asserting rights thereunder, it is not entitled to the liberal application of the doctrine of equivalents which might be invoked if the device had gone at once into extensive use.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 24; Dec. Dig. § 22.*]

In Equity. Suit by the F. Wesel Manufacturing Company against the Printing Machinery Company. On final hearing. Decree for defendant.

Kiddle & Margeson, Wylie C. Margeson, Robert Fletcher Rogers, and Edwin A. Packard, all of New York City, for complainant.

Kerr, Page, Cooper & Hayward, of New York City, Alfred M. Allen, of Cincinnati, Ohio, and Thomas B. Kerr, of New York City, for defendant.

ROSE, District Judge. Complainant is the owner of Letters Patent No. 673,485, May 7, 1901, to Edward R. Storm. It says the defendant has infringed the first and third of the 15 claims thereof. The patent is for an improvement in printing plate holders. The patentee sometimes employs the same word to describe different things. It will be well, therefore, to define the sense in which certain terms will be here used.

The printing plate itself will be called the "plate." The block, bed, or base upon which it must be secured while printing is being done will be referred to as the "base." The device which actually holds the plate in place may be thought of as composed of two elements: (1) The block; that is, the element which keeps the whole in its place in or on the base and supports the clamp which grips or holds the plate; (2) the clamp, which does the actual gripping or holding. The terms as above defined will be used in preference to those actually employed by the patentee.

[1] He says that the invention has three purposes: (1) To provide a block which may be inserted and secured in a slotted base at any part of the latter; (2) to afford facilities for quickly adjusting the plates to correct and perfect register and reliably to secure them to the base for printing; (3) to provide a means for removing the plates after printing.

At the time the application for the patent was made, it was common to construct a base with slotted diagonal grooves extending from

one of its sides to the other. In order to keep the blocks from coming out of the grooves, the latter were made wider at the bottom than at the top, while the blocks themselves were given a width only slightly less than the bottom of the groove, but greater than that of the top. This construction, of course, prevented the block from coming out of the groove when the user wanted it to stay in, but it also held it fast when he would like to have taken it out. Such block could be put in or taken out only at the end of the groove, which was, of course, in the line of one of the sides of the base. The impossibility of inserting or extracting it at any other part of the groove was a serious and obvious limitation upon its convenience and economical usefulness. It was and is common to secure a number of plates to the same base. When this is done, it usually happens that some plates are surrounded by others. If the plates are held by blocks and clamps which cannot be taken out of the groove, except at the end of the groove, and it becomes necessary to change the position of one of the inside plates (as in practice is frequently the case), all the plates which lie between it and the side of the base must be taken off. It was, therefore, desirable to devise a block and holder which could be put in or taken out of the groove at any point. No invention was required to appreciate this want, although invention might well be exercised in supplying it.

Storm conceived the idea of a block which should itself be of less width than the groove at the top and of keeping it in its place in the groove by the use of a screw, which he inserted diagonally in the block. Until it was desired to make the block fast in the groove, the point of the screw remained imbedded in the block. After the latter had been put in the groove, the screw was turned until the point, emerging from the block, impinged firmly upon the side of the groove. This contact it was supposed would be close enough to keep the block from moving laterally in the groove. The physical projection of the screw prevented any vertical movement of the block. When there was any reason to remove the block, a few turns of the screw again brought the latter back into the block, which then could be easily lifted out of the groove.

The third claim of this patent is for—

"the combination of a block having grooves of greater width at the lower than at the upper part and adjustable plate clamps adapted to be inserted in the said grooved block at any point of the groove and secured to the block, having means as a screw and face plate with a holding catch thereon adapted to move the printing plate over limited distances and hold the said printing plate securely to the said block at any point of such limited distances."

It will be observed that one of the elements is adjustable clamps adapted to be inserted in a groove block at any point in the groove. Defendant's blocks can be inserted at any point of the groove, but instead of the screw, it keeps them in place by a simple spring device arranged automatically to press upon the sides of the groove, and thereby prevent the blocks coming out of the latter. These springs can be instantly released from action by grasping the block with a pair of tweezers. The device of the defendant is intended to accomplish, and does accomplish, the same object as Storm set out to attain. Storm was not the first to discover that such object was of itself desirable. Every

one who had anything to do with plate holders must have always known how useful would be a block which could be inserted or taken out at any part of the groove. Storm found one way of accomplishing that purpose. His discovery, if it involved invention, entitled him to the exclusive use of that way and of all equivalents thereof. It did not and could not give him the right to say that no one else should accomplish that same object in any other way, no matter how widely different from his. In short, his invention lay, not in recognizing the desirability of a block which could be inserted anywhere, but in finding out a way of so inserting it.

Equivalence is therefore to be tested by the means employed, not by the end attained. The simple device of the defendant does not appear to be the equivalent of the somewhat crude and clumsy method employed by Storm. It is very doubtful if there could be any invention either in putting a screw through the block, so as to hold the block in place, or in taking the screw out again when you wanted to remove the block. For millenniums men have used screws for such purposes. It is not, however, necessary, to decide whether in so employing the screw Storm was an inventor or not. It is enough to say that his invention, if there was one, did not cover all adjustable plate clamps adapted to be inserted in a grooved base at any point of the groove. If the third claim of his patent is to be construed as having that breadth, it is invalid, because it covers more than he invented. If, on the other hand, it be construed to include only a screw or some equivalent means of securing the block, defendant does not infringe.

The first claim is for—

"the combination of a block having grooves adapted to receive and hold one or more plate clamps and adjustable plate clamps, held in the grooves each having a holding catch, and means, as a screw adapted to force the holding catch against the edge of the printing plate, move the said printing plate over limited distances and hold the said printing plate securely to the said block at any point of such limited distances."

It was and is desirable to be able to change the position of the plate on its bed through the means of the block and clamp and without removing the block from its place. Storm thought to achieve that purpose by cutting an inclined plane in the block and by securing a clamp to the block by a screw other than the one already referred to. The end of this screw impinged upon the inclined plane. By turning it in one direction or the other, its pressure upon the inclined plane would result in a certain limited movement of the clamp. This clamp had a beveled edge to fit over the oppositely arranged bevel of the plate. The block was put in the groove and screwed in what was believed to be at least its approximately desired position, and then the nicer adjustment was intended to be made and preserved by the manipulation of this second screw, which could give to the clamp a movement of perhaps as much as an eighth of an inch.

In defendant's device, there is a cogwheel, the cogs of which fit into a ratchet with which the edges of the bottom of its groove are equipped throughout their entire length. This wheel is made to move by a small tool inserted through a hole in the clamp. As a conse-

quence, the lock with its clamp may be moved along the entire length of any groove, and, as has already been stated, it may be taken out from the groove at any point. The clamp, which, like that of Storm, is beveled, may be, therefore, adjusted to the printing plate at any place on the base, and its adjustment may be easily and quickly changed to any extent desired. One of the elements of the Storm combination is a clamp, or, as he calls it, a holding catch, adapted to move the plate over limited distances and hold the plate secure to the block at any point of such limited distance.

Complainant's present contention in effect is that the word "limited" may be stricken out of this claim, or that the claim shall be construed precisely as it would be if that word was not in it. It may be that Storm unnecessarily restricted his patent by insertion of that term; but he did insert it, and complainant must stand by the consequences. In the sense in which the word "limited" is used by Storm, defendant's device moves through unlimited distance, and will hold the printing plate securely to the base at any point, no matter how remote from the place at which the block was originally inserted. Even if the evidence showed that Storm had made a great contribution to the art and was entitled to the rewards commensurate therewith, it would be difficult to hold that either of the claims of the patent in suit is infringed by defendant.

[2] It does not appear, however, that his device was ever used at all until two or three months ago and after this suit was brought. Defendant's holder was put on the market some years ago, and is, as defendant claims, protected by letters patent. Complainant thereafter began the manufacture of a device which superficially appears to resemble complainant's far more closely than it does that of Storm. Defendant, in another district and court, sued complainant for infringing its patent. After that proceeding was brought, complainant, preparing to defend it, had its attention called to the Storm patent, which it then purchased. This suit followed. Its expert caused holders of the kind described by Storm to be made, and demonstrated they would work by using them in printing a thousand sheets for a customer of the printers at whose shop the experiment was tried.

Complainant is, of course, right in saying that the fact that Storm did not see fit to use his patent did not justify defendant or any one else in infringing it. Nor does there appear to be any evidence in this case that Storm or his assignee is in any way estopped from asserting any rights that he ever had. On the other hand, there is here no reason to give to the doctrine of equivalents that liberal application which may be sometimes properly made in favor of a patent which has at once gone into extensive use. In such cases there is a presumption that the patentee had made a real and important contribution to the art. The facts here in evidence raise none such.

It follows, from what has been said, that defendant has not infringed either of the claims in suit, and the bill of complaint must accordingly be dismissed, with costs.